In the Matter of the Guardianship of ARTHUR GEORGE BAILLARGEON (BADGER), a Minor under Fourteen Years of Age. LUCY GEBO, Appellant; JOSEPH H. BADGER, Respondent.

Third Department, July 8, 1921.

**Guardian and ward — contest between paternal grandfather and maternal grandmother for custody of infant — when child should be left in custody of grandmother.**

In a contest between a paternal grandfather and a maternal grandmother to be appointed a guardian of the person and property of a boy child the evidence examined and *held*, that the maternal grandmother, with whom the child has always lived, should be appointed its guardian, for not only would the child not be a gainer if its custody passed to the paternal grandfather under the facts of the case but the change would work an injury in all material, physical, moral and spiritual ways.

APPEAL by Lucy Gebo from an order and decree of the Surrogate's Court of the county of Clinton, entered in the office of said court on the 17th day of November, 1919, appointing Joseph H. Badger as guardian of the person and estate of Arthur George Baillargeon (Badger), a minor under fourteen years of age.

*Patrick J. Tierney*, for the appellant.

*Egbert C. Everest*, for the respondent.

H. T. Kellogg, J.: ·

This is a contest between Joseph H. Badger, a paternal grandfather, and Lucy Gebo, a maternal grandmother, to be appointed the guardian of the person and property of a boy child.

The parents of the child both died in the month of November, 1918, when the child was eleven months old. At the time of their deaths the parents had lived for about one year in the city of Plattsburgh, N. Y. With them Lucy Gebo had lived throughout the period of the boy's life. She attended at the birth of the boy, was his godmother when he was baptized in the Catholic faith, and thereafter took care of him until the deaths of the parents. The father was a railroad fireman, and the family lived in somewhat frugal circumstances. The father left as his only property about $200 in cash and a policy of life insurance payable to his wife. This meagre property was inherited by the boy. After the death of the parents the boy was taken by Lucy Gebo to the home of David Gebo, her brother-in-law and the boy's granduncle and godfather, upon a farm owned by him in the vicinity of Plattsburgh. This was in accordance with the wish of the boy's mother, expressed before her death when she said to Lucy Gebo: "I put the baby in your care and want you to go up to Uncle David's and take care of him." Lucy Gebo has ever since taken care of the child at the home of David Gebo, where she and the child now reside.

Shortly after the death of the boy's father, Joseph Badger came to Plattsburgh. Within a few days of the death of the mother he applied for letters of guardianship. He came from the city of Rochester, N. Y., and had never before (so far as appears) seen this grandchild. Whether he was lured to make the application by a desire to obtain possession of the insurance moneys belonging to the child, or was animated by a feeling of solicitude for the welfare of the son of his son, does not appear. It must at least be true that he had not as yet acquired a deep affection for this grandchild.

The application was resisted by Lucy Gebo, who herself sought letters. Hearings were had before the surrogate on November 29 and 30, 1918, and upon the latter day, the case having been submitted, the surrogate announced that he

reserved decision. Hearings were again had on June 30 and July 1, 1919. No decision was thereafter rendered until the 19th day of November, 1919, when the surrogate made a decree appointing Joseph H. Badger the general guardian of the person and property of his grandchild. An appeal was taken from this decree which was not heard by this court until its term in May, 1920. Meanwhile the boy, who is the subject of the proceedings, has ever since lived at the home of David Gebo in the custody of his grandmother Lucy Gebo. He is now two years and six months old, and the question arises whether the decree appointing Joseph H. Badger general guardian, which will have the effect of taking the boy from his grandmother and turning him over to his grandfather, should be affirmed.

Lucy Gebo has been a widow for twenty-one years, and at the time of the institution of these proceedings was sixty-three years of age. For twenty-one years she managed to support herself, and for the greater part of that period she maintained her daughter, who was the mother of this child. She also contrived to save from her slender earnings the sum of $500. As the surrogate says, she is " an estimable person," and " is deeply devoted to this infant." As he has also said: " The evidence discloses that she is a woman of good character and wonderful industry, and that she has exhibited great courage and unselfishness in her devotion to her husband and family." David Gebo, with whom she now lives, was a man sixty-two years of age when the proceedings were started, and his wife fifty-nine. They have an only daughter twenty-two years of age, who has been graduated at the State Normal School at Plattsburgh. It has been shown that the farm upon which this family together with Lucy Gebo and the boy have been living since his parents died was of the value of $3,000. Several of the near relatives of David Gebo have lived at his home free of charge while attending the schools of Plattsburgh. Lucy Gebo and the child are now living there without charge. No criticism is made of the inmates of this household, of the comforts of the house, of the wholesomeness of the food, of the present material or moral environment of the child. That he receives from Lucy Gebo the devoted care equal to that of an affectionate mother is not doubted. The wife of Joseph H.

Badger, testifying at the first hearing, stated that Lucy Gebo " seemed very fond of " the child, and that " she always had it in her arms when Mrs. George Badger didn't have it." She also said that she was told " You can't part Aunt Lucy and that baby." In answer to the question, " You do recognize the fact, then, that it is proper she should still continue to take care of the baby? " she replied: " I think the baby ought to come to us with the grandmother. By not separating the baby from her it wouldn't hurt her feelings and she'd be with us and the baby." It cannot be supposed that the great affection in which the child is thus shown to be held by Lucy Gebo does not meet with a response now that the child is more than two years of age, or that it does not redound to the physical and moral well-being of the child. We have, therefore, a child two and a half years of age in a comfortable home, surrounded by people of respectability, one of whom is its grandmother who loves it devotedly, and another of whom is its granduncle who is willing without charge to provide it a home and give it support. Will it be better for the child to be taken from this home and given into the custody of its paternal grandfather? If the circumstances of the grandfather are considered, and the character of the home to which it will be transferred is properly visualized the answer must be in the negative.

Joseph H. Badger is fifty-nine years of age, and his wife is fifty-six. In respect to age, therefore, these grandparents do not enjoy a great advantage over Lucy Gebo who is sixty-three. Joseph H. Badger is a plumber by trade and during the the last eight years has lived in at least four different localities. From May, 1918, to May, 1919, he and his family lived in a rented ten-room house in the city of Rochester. Their married daughter Bertha, who has at times been separated from her husband, their unmarried son Bernard, who has at times been insane, and their unmarried daughter Bernadette have lived with them. During this period they have rented rooms in this small house to at least six roomers at a time, three of whom have eaten at their table. Their home has been so cramped that it has afforded no room in which to live by day except the kitchen and the dining room. Mrs. Badger has done the cooking for the family and the boarders, and with

the unmarried daughter has waited on the table. For at least a part of the time all of this family, the grandfather, the grandmother, the son and the two daughters have worked in factories. These facts do not picture a genuine home or an environment either wholesome or attractive for the upbringing of a child. They do not indicate that this busy family would have time to waste upon this child the attention, the care and the affection which if possible should be given him. The same family now lives in a house owned by Joseph H. Badger which, including the kitchen and dining room, contains but six rooms. A house of this character situated upon some minor street in the city of Rochester, doubtless upon a lot of land barely big enough to hold it, does not seem a suitable place to rear a child when a better home is offered. The house, which is valued at the sum of $3,000, is mortgaged for $2,000. The equity in the house seems to constitute the only asset which Joseph H. Badger has.

It does not appear, therefore, that in any material way will this child be a gainer if its custody passes to Joseph H. Badger. It would then be transferred from a comfortable home on a farm to the cramped environment of a small house and the squalid streets of a city. It would pass from the home of a granduncle who owns a farm to the home of a grandfather whose property is of less value. It would be deprived of the doting affection of a grandmother, and be given into the charge of a large family too busy in factory work to give it attention, the members of which are almost entire strangers to the child. From a grandmother without any other descendant upon whom to shower affection it would go to grandparents having a bountiful progeny of nineteen living children and grandchildren. It seems to us very clear that the change would work an injury, not a benefit in all material, physical, moral and spiritual ways. Therefore, we believe that the decree should be reversed, and that Mrs. Gebo should be appointed general guardian.

Judgment should follow accordingly.

Order modified by substituting Lucy Gebo as guardian in place of Joseph H. Badger, and as so modified said order is unanimously affirmed, without costs.